IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO LOCATE THE CELLULAR DEVICE ASSIGNED CALL NUMBER 978-525-8484 | Case No. 1:20- 127-01-AJ<br><br>**Filed Under Seal – Level II** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Amanda Young, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the location of the cellular device assigned call number 978-525-8484, (the "Target Cellular Device"), which is described in Attachment A.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been since 2017.   I am currently assigned to investigate violations of criminal law relating to the sexual exploitation of children as part of an FBI Task Force.   I have gained expertise in this area through classroom training and daily work related to these types of investigations.   As part of my responsibilities, I have been involved in the investigation of cases involving sex trafficking, enticement of minors, and transportation of minors for illegal sex acts, and have participated in the execution of search warrants involving electronic evidence and cellular devices.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.   This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      One purpose of applying for this warrant is to determine with precision the Target Cellular Device's location.   However, there is reason to believe the Target Cellular Device is currently located somewhere within this district.   On or about June 30, 2020, United States Magistrate Judge Katharine H. Parker, signed a warrant for cellphone location information for the Target Cellular Device (the "GPS Warrant"), which is attached as Exhibit A.   Pursuant to the GPS Warrant, the FBI has received GPS location data since approximately 10:15 p.m. on June 30, 2020 and has also historical cell site data for the Target Cellular Device for the period June 1, 2020 to the present.   That data shows that the Target Cellular Device is currently located in the District of New Hampshire and has been located in the District of New Hampshire for the last 30 days.   The location data has allowed the FBI to identify approximately one square mile in which the Target Cellular Device is located, but the location data is insufficiently specific to allow the FBI to identify the particular building in which the Target Cellular Device is currently located.   Pursuant to Rule 41(b)(2), law enforcement may locate the Target Cellular Device outside the district provided the device is within the district when the warrant is issued.

5.      Based on the facts set forth herein, there is probable cause to believe that GHISLAINE MAXWELL has violated 18 U.S.C. § 371 (conspiracy to entice minors to travel to engage in illegal sex acts); 18 U.S.C. § 2422 (enticement of a minor to travel to engage in illegal sex acts); 18 U.S.C. § 371 (conspiracy to transport minors with intent to engage in criminal sexual activity); 18 U.S.C. § 2423(a) (transportation of a minor with intent to engage in criminal sexual activity); and 18 U.S.C. § 1623 (perjury).   Specifically, on June 29, 2020, a grand jury sitting in the Southern District of New York returned an indictment charging MAXWELL with these crimes,

which is attached as Exhibit B.  That same day, United States Magistrate Judge Lisa Margaret Smith signed an arrest warrant for MAXWELL, which is attached as Exhibit C.

6.     There is also probable cause to believe that the Target Cellular Device's location will assist law enforcement in arresting MAXWELL, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).   In particular, and as detailed below, there is probable cause to believe that MAXWELL is the primary user of the Target Cellular Device which remains active.   The FBI does not know MAXWELL's current location and accordingly requires the information sought in this application in order to locate and arrest MAXWELL.

7.     Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41.   See 18 U.S.C. §§ 3121-3127.   This warrant therefore includes all the information required to be included in a pen register order.   See 18 U.S.C. § 3123(b)(1). Consistent with the requirement for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation by FBI. See 18 U.S.C §§ 3122(b), 3123(b).

8.     Consistent with the requirement for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation by FBI. See 18 U.S.C §§ 3122(b), 3123(b)."

## **PROBABLE CAUSE**

9.     Based on the following, I respectfully submit there is probable cause to believe that the Target Cellular Device's location will assist law enforcement in locating and arresting MAXWELL pursuant to the arrest warrant described in paragraph 5, above.

10.     As set forth in Exhibit A, United States Magistrate Judge Katharine H. Parker found on June 30, 2020 that there is probable cause to believe that the location of the Target Cellular Device will reveal the location of GHISLAINE MAXWELL.   As set forth in paragraph 4 above, that same day, the FBI received location information from AT&T revealing that the Target Cellular Device is currently located in the District of New Hampshire and has been located in the District of New Hampshire for at least the last 30 days.

11.     Based on my review of Customs and Border Patrol records, I know that GHISLAINE MAXWELL is a United States citizen and that she most recently entered the United States in or about June of 2019.   There is no record of MAXWELL leaving the United States since her arrival in June of 2019.

12.     Based on my review of court filings, I am aware that GHISLAINE MAXWELL is represented by counsel in multiple ongoing civil lawsuits in the United States.   As recently as in or about June 2020, attorney Laura Menninger appeared in in the Southern District of New York for oral argument before United States District Judge Loretta A. Preska on MAXWELL's behalf.

13.     Based on my review of AT&T records, I have learned that the Target Cellular Device is subscribed in the name of "G Max," which appears to be a shortened version of GHISLAINE MAXWELL's name.

14.     I further know from my review of AT&T records the following:

        a.   The Target Cellular Device has been in contact with a phone subscribed to in the name of "Laura Menninger," which I know from my review of court records is the name of an attorney who currently represents GHISLAINE MAXWELL in civil litigation (the "Laura Menninger Phone").   The most recent contact between The Target Cellular Device and the Laura Menninger Phone occurred within the last 30 days.

b.   The Target Cellular Device has also been in contact with a phone subscribed to the business "Haddon, Morgan, & Foreman," which I know from my review of court records is the name of a law firm that currently represents GHISLAINE MAXWELL in civil litigation (the "Haddon, Morgan, & Foreman Phone").   The most recent contact between The Target Cellular Device and the Haddon, Morgan, & Foreman Phone occurred within the last 30 days.

c.   The Target Cellular Device has also been in contact with a phone subscribed to in the name of "Isabel Maxwell," which I know from my review of a law enforcement database is the name of GHISLAINE MAXWELL's sister (the "Isabel Maxwell Phone").   The most recent contact between The Target Cellular Device and the Isabel Maxwell Phone occurred in or about May 2020.

d.   The Target Cellular Device has also been in contact with a phone subscribed to in the name of "Scott Borgerson," which I know from my review of bank records and Amazon records is the name of an individual with whom GHISLAINE MAXWELL shares a joint bank account and to whom MAXWELL's Amazon account has sent multiple packages within approximately the last year (the "Scott Borgerson Phone"). The most recent contact between The Target Cellular Device and the Scott Borgerson Phone occurred in or about March 2020.

15.   Accordingly, I respectfully submit that there is probable cause to believe that the location of the Target Cellular Device will reveal the location of GHISLAINE MAXWELL.

## **MANNER OF EXECUTION**

16.   In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications.   When sending or receiving a communication, a

cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

17.     To facilitate execution of this warrant to determine the location of the Target Cellular Device, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the Target Cellular Device or receiving signals from nearby cellular devices, including the Target Cellular Device.   Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others.   The device may send a signal to the Target Cellular Device and nearby cellular devices and thereby prompt them to send signals that include the unique identifier of the device.   Law enforcement may monitor the signals broadcast by the Target Cellular Device for non-content signal information and use that information to determine the Target Cellular Device's location, even if it is located inside a house, apartment, or other building.    The device will not intercept the contents of the Target Cellular Device's communications, such as telephone calls, text messages, and other electronic communications. Further, the device will not collect any other data stored on the Target Cellular Device, including e-mails, text messages, contact lists, images, or Global Positioning System (GPS) data.

18.     The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity.   Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices.   In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity to determine whether those devices' unique identifiers match the identifiers of the Target Cellular Device.   These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target

Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device.   To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

## AUTHORIZATION REQUEST

19.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41.   The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

20.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance.   This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.   Providing immediate notice to the subscriber or user of the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, and flee from prosecution.   *See* 18 U.S.C. § 3103a(b)(1).   There is reasonable necessity for the use of the technique described above, for the reasons set forth above.   *See* 18 U.S.C. § 3103a(b)(2).

21.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Device outside of daytime hours.

22.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.   These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.   Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

23.     A search warrant may not be legally necessary to compel the investigative technique described herein.   Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully Submitted,

/s/ Amanda Young
Amanda Young, Special Agent
Federal Bureau of Investigation

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Honorable Andrea K. Johnstone
United States Magistrate Judge
District of New Hampshire
Dated: **Jul 1, 2020**

8

Original

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Second Warrant and Order For Prospective and Historical Location Information and Pen Register Information for the Cellphone Assigned Call Number 978-525-8484, USAO Reference No. 2018R01618 | **SECOND WARRANT AND ORDER**<br><br>_____ **Mag.** _____ |

**Second Warrant and Order**
**for Cellphone Location Information and Pen Register Information**
**and for Sealing and Non-Disclosure**

TO:    AT&T ("Service Provider"), and any subsequent provider of service to the Target Cellphone specified below ("Subsequent Service Provider")

        Federal Bureau of Investigation ("Investigative Agency")

        Upon the Application and Agent Affidavit submitted by the Government in this matter:

## I. Findings

The Court hereby finds:

1. The Target Cellphone (the "Target Cellphone") that is the subject of this Order is assigned call number 978-525-8484, is subscribed to in the name of "G Max" (the "Subscriber"), and is currently serviced by the Service Provider.

2. Pursuant to 18 U.S.C. § 2703(c)(1)(A) and the applicable provisions of Rule 41 of the Federal Rules of Criminal Procedure, the Government's application sets forth probable cause to believe that the prospective and historical location information for the Target Cellphone will reveal the location of a person to be arrested for suspected violations of 18 U.S.C. §§ 371, 2422, 2423(a), and 1623 ("the Subject Offenses").

3. Pursuant to 18 U.S.C. § 2703(d), the Government's application also sets forth specific and articulable facts showing that there are reasonable grounds to believe that the toll records for the Target Cellphone are relevant and material to an ongoing criminal investigation.

4.   Pursuant to 18 U.S.C. § 3123(b)(1), the Government has certified that the pen register information for the Target Cellphone is relevant to an ongoing investigation by the Investigating Agency of GHISLAINE MAXWELL and others unknown in connection with suspected violations of the Subject Offenses.

5.   Pursuant to 18 U.S.C. § 2705(b), there is reason to believe that notification of the existence of this Warrant and Order will result in flight from prosecution, and/or intimidation of potential witnesses, or otherwise will seriously jeopardize an ongoing investigation.

NOW, THEREFORE, pursuant to Fed. R. Crim. P. 41, 18 U.S.C. §§ 3121 *et seq.*, 18 U.S.C. §§ 2701 *et seq.*, and 18 U.S.C. § 3103a, IT IS HEREBY ORDERED:

## II.   Order to Service Provider

6.   **Service Provider.** This Order shall apply to the Service Provider specified above, and to any subsequent provider of service to the Target Cellphone without need for further Order of this Court.

7.   **Prospective Location Information**. The Service Provider shall provide to the Investigating Agency on a prospective basis, for a period of 45 days from the date of this Order, information concerning the location of the Target Cellphone ("Prospective Location Information"), including all available:

a.   precision location information, including GPS data, E-911 Phase II data, and latitude-longitude data; and

b.   cell site data, including any data reflecting (a) the cell towers and sectors thereof utilized in routing any phone, text, or data communication to or from the Target Cellphone, and (b) the approximate range of the target phone from the cell towers during the communication (including per-call measurement ("PCM") or round-trip time ("RTT") data);

2

8. **Historical Location Information and Toll Records**. The Service Provider shall provide to the Investigating Agency all available historical cell site location information reflecting the cell towers and sectors thereof utilized in routing any phone, text, or data communication to or from the Target Cellphone, and the approximate range of the target phone from the cell towers during the communication (PCM/RTT data), for the period from June 1, 2020 through the present, as well as all available toll records (including call detail, SMS detail, or data session detail records) for the communications.

9. **Pen register with caller identification and/or trap and trace device.**  The Service Provider shall provide to the Investigating Agency, for a period of 45 days from the date of this order, all dialing, routing, addressing, or signaling information associated with each voice, text, or data communication transmitted to or from the Target Cellphone, including but not limited to:

a.  any unique identifiers associated with the phone, including ESN, MEIN, MSISDN, IMSI, IMEI, SIM, MIN, or MAC address;

b.  source and destination telephone numbers and/or Internet protocol ("IP") addresses;[1]

c.  date, time, and duration of the communication; and

d.  cell-site information as specified above.

---

[1] The Service Provider is not required to provide post-cut-through dialed digits ("PCTDD"), or digits that are dialed after a telephone call from the Target Phone has been connected.  If possible, the Service Provider will forward only pre-cut-through-dialed digits to the Investigative Agency. However, if the Service Provider's technical capabilities require it to forward all dialed digits, including PCTDD, to the Investigative Agency, the Investigative Agency will only decode and forward to the agents assigned to the investigation, the numbers that are dialed before the call is cut through.

10.   **Technical Assistance.** The Service Provider shall furnish the Investigating Agency all information, facilities, and technical assistance necessary to accomplish the disclosure of all of the foregoing information relating to the Target Cellphone unobtrusively and with the minimum interference to the service presently provided to the Subscriber.

11. **Non-Disclosure to Subscriber.**  The Service Provider, including its affiliates, officers, employees, and agents, shall not disclose the existence of this Warrant and Order, or the underlying investigation, to the Subscriber or any other person, for a period of one year from the date of this Warrant and Order, subject to extension upon application to the Court, if necessary.

4

### III.   Additional Provisions

12. **Compensation for Costs.** The Investigating Agency shall compensate the Service Provider for reasonable expenses incurred in complying with the Warrant and this Order.

13. **Sealing.** This Warrant and Order, and the supporting Application and Agent Affidavit, shall be sealed until otherwise ordered by the Court, except that the Government may without further order of this Court: serve this Warrant and Order on the Service Provider; provide copies of the Warrant and Order or the supporting Application and Agent Affidavit as need be to personnel assisting the Government in the investigation and prosecution of this matter; and disclose these materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

Dated:  New York, New York

| | |
|---|---|
| 6/30/2020 | 10:08 a.m. |
| Date Issued | Time Issued |

*Kathaine H Parker*
_____
UNITED STATES MAGISTRATE JUDGE
Southern District of New York

2019.07.24

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x
                   :
UNITED STATES OF AMERICA     :
                   :
      - v. -          :
                   :
GHISLAINE MAXWELL,       :
                   :
      Defendant.     :
                   :
- - - - - - - - - - - - - - - x

SEALED
INDICTMENT

20 Cr.

**20 Cr. 330**

COUNT ONE
**(Conspiracy to Entice Minors to Travel to Engage in
Illegal Sex Acts)**

The Grand Jury charges:

OVERVIEW

1.   The charges set forth herein stem from the role of GHISLAINE MAXWELL, the defendant, in the sexual exploitation and abuse of multiple minor girls by Jeffrey Epstein.   In particular, from at least in or about 1994, up to and including at least in or about 1997, MAXWELL assisted, facilitated, and contributed to Jeffrey Epstein's abuse of minor girls by, among other things, helping Epstein to recruit, groom, and ultimately abuse victims known to MAXWELL and Epstein to be under the age of 18.   The victims were as young as 14 years old when they were groomed and abused by MAXWELL and Epstein, both of whom knew that certain victims were in fact under the age of 18.

2.   As a part and in furtherance of their scheme to abuse minor victims, GHISLAINE MAXWELL, the defendant, and Jeffrey Epstein enticed and caused minor victims to travel to

Epstein's residences in different states, which MAXWELL knew and intended would result in their grooming for and subjection to sexual abuse.  Moreover, in an effort to conceal her crimes, MAXWELL repeatedly lied when questioned about her conduct, including in relation to some of the minor victims described herein, when providing testimony under oath in 2016.

### FACTUAL BACKGROUND

3.   During the time periods charged in this Indictment, GHISLAINE MAXWELL, the defendant, had a personal and professional relationship with Jeffrey Epstein and was among his closest associates.  In particular, between in or about 1994 and in or about 1997, MAXWELL was in an intimate relationship with Epstein and also was paid by Epstein to manage his various properties.  Over the course of their relationship, MAXWELL and Epstein were photographed together on multiple occasions, including in the below image:



4.    Beginning in at least 1994, GHISLAINE MAXWELL,
the defendant, enticed and groomed multiple minor girls to
engage in sex acts with Jeffrey Epstein, through a variety of
means and methods, including but not limited to the following:

a.    MAXWELL first attempted to befriend some of
Epstein's minor victims prior to their abuse, including by
asking the victims about their lives, their schools, and their
families.  MAXWELL and Epstein would spend time building
friendships with minor victims by, for example, taking minor
victims to the movies or shopping.  Some of these outings would
involve MAXWELL and Epstein spending time together with a minor
victim, while some would involve MAXWELL or Epstein spending
time alone with a minor victim.

b.    Having developed a rapport with a victim,
MAXWELL would try to normalize sexual abuse for a minor victim
by, among other things, discussing sexual topics, undressing in
front of the victim, being present when a minor victim was
undressed, and/or being present for sex acts involving the minor
victim and Epstein.

c.    MAXWELL'S presence during minor victims'
interactions with Epstein, including interactions where the
minor victim was undressed or that involved sex acts with
Epstein, helped put the victims at ease because an adult woman
was present.  For example, in some instances, MAXWELL would

3

massage Epstein in front of a minor victim.  In other instances,
MAXWELL encouraged minor victims to provide massages to Epstein,
including sexualized massages during which a minor victim would
be fully or partially nude.  Many of those massages resulted in
Epstein sexually abusing the minor victims.

       d.   In addition, Epstein offered to help some
minor victims by paying for travel and/or educational
opportunities, and MAXWELL encouraged certain victims to accept
Epstein's assistance.  As a result, victims were made to feel
indebted and believed that MAXWELL and Epstein were trying to
help them.

       e.   Through this process, MAXWELL and Epstein
enticed victims to engage in sexual activity with Epstein.  In
some instances, MAXWELL was present for and participated in the
sexual abuse of minor victims.  Some such incidents occurred in
the context of massages, which developed into sexual encounters.

       5.   GHISLAINE MAXWELL, the defendant, facilitated
Jeffrey Epstein's access to minor victims knowing that he had a
sexual preference for underage girls and that he intended to
engage in sexual activity with those victims.  Epstein's
resulting abuse of minor victims included, among other things,
touching a victim's breast, touching a victim's genitals,
placing a sex toy such as a vibrator on a victim's genitals,

4

directing a victim to touch Epstein while he masturbated, and directing a victim to touch Epstein's genitals.

### MAXWELL AND EPSTEIN'S VICTIMS

6.     Between approximately in or about 1994 and in or about 1997, GHISLAINE MAXWELL, the defendant, facilitated Jeffrey Epstein's access to minor victims by, among other things, inducing and enticing, and aiding and abetting the inducement and enticement of, multiple minor victims.  Victims were groomed and/or abused at multiple locations, including the following:

a.     A a multi-story private residence on the Upper East Side of Manhattan, New York owned by Epstein (the "New York Residence"), which is depicted in the following photograph:



b.   An estate in Palm Beach, Florida owned by Epstein (the "Palm Beach Residence"), which is depicted in the following photograph:



c.   A ranch in Santa Fe, New Mexico owned by Epstein (the "New Mexico Residence"), which is depicted in the following photograph:



d.   MAXWELL's personal residence in London,

England.

7.   Among the victims induced or enticed by GHISLAINE

MAXWELL, the defendant, were minor victims identified herein as

Minor Victim-1, Minor Victim-2, and Minor Victim-3.   In

particular, and during time periods relevant to this Indictment,

MAXWELL engaged in the following acts, among others, with

respect to minor victims:

a.   MAXWELL met Minor Victim-1 when Minor

Victim-1 was approximately 14 years old.   MAXWELL subsequently

interacted with Minor Victim-1 on multiple occasions at

Epstein's residences, knowing that Minor Victim-1 was under the

age of 18 at the time.   During these interactions, which took

place between approximately 1994 and 1997, MAXWELL groomed Minor

Victim-1 to engage in sexual acts with Epstein through multiple

means.   First, MAXWELL and Epstein attempted to befriend Minor

Victim-1, taking her to the movies and on shopping trips.

MAXWELL also asked Minor Victim-1 about school, her classes, her

family, and other aspects of her life.   MAXWELL then sought to

normalize inappropriate and abusive conduct by, among other

things, undressing in front of Minor Victim-1 and being present

when Minor Victim-1 undressed in front of Epstein.   Within the

first year after MAXWELL and Epstein met Minor Victim-1, Epstein

began sexually abusing Minor Victim-1.   MAXWELL was present for

7

and involved in some of this abuse. In particular, MAXWELL involved Minor Victim-1 in group sexualized massages of Epstein. During those group sexualized massages, MAXWELL and/or Minor Victim-1 would engage in sex acts with Epstein. Epstein and MAXWELL both encouraged Minor Victim-1 to travel to Epstein's residences in both New York and Florida. As a result, Minor Victim-1 was sexually abused by Epstein in both New York and Florida. Minor Victim-1 was enticed to travel across state lines for the purpose of sexual encounters with Epstein, and MAXWELL was aware that Epstein engaged in sexual activity with Minor Victim-1 after Minor-Victim-1 traveled to Epstein's properties, including in the context of a sexualized massage.

b. MAXWELL interacted with Minor Victim-2 on at least one occasion in or about 1996 at Epstein's residence in New Mexico when Minor Victim-2 was under the age of 18. Minor Victim-2 had flown into New Mexico from out of state at Epstein's invitation for the purpose of being groomed for and/or subjected to acts of sexual abuse. MAXWELL knew that Minor Victim-2 was under the age of 18 at the time. While in New Mexico, MAXWELL and Epstein took Minor Victim-2 to a movie and MAXWELL took Minor Victim-2 shopping. MAXWELL also discussed Minor Victim-2's school, classes, and family with Minor Victim-2. In New Mexico, MAXWELL began her efforts to groom Minor Victim-2 for abuse by Epstein by, among other things, providing

an unsolicited massage to Minor Victim-2, during which Minor Victim-2 was topless.  MAXWELL also encouraged Minor Victim-2 to massage Epstein.

     c.   MAXWELL groomed and befriended Minor Victim-3 in London, England between approximately 1994 and 1995, including during a period of time in which MAXWELL knew that Minor Victim-3 was under the age of 18.  Among other things, MAXWELL discussed Minor Victim-3's life and family with Minor Victim-3.  MAXWELL introduced Minor Victim-3 to Epstein and arranged for multiple interactions between Minor Victim-3 and Epstein.  During those interactions, MAXWELL encouraged Minor Victim-3 to massage Epstein, knowing that Epstein would engage in sex acts with Minor Victim-3 during those massages.  Minor Victim-3 provided Epstein with the requested massages, and during those massages, Epstein sexually abused Minor Victim-3. MAXWELL was aware that Epstein engaged in sexual activity with Minor Victim-3 on multiple occasions, including at times when Minor Victim-3 was under the age of 18, including in the context of a sexualized massage.

### MAXWELL'S EFFORTS TO CONCEAL HER CONDUCT

     8.   In or around 2016, in the context of a deposition as part of civil litigation, GHISLAINE MAXWELL, the defendant, repeatedly provided false and perjurious statements, under oath, regarding, among other subjects, her role in facilitating the

abuse of minor victims by Jeffrey Epstein, including some of the specific events and acts of abuse detailed above.

### STATUTORY ALLEGATIONS

9.   From at least in or about 1994, up to and including in or about 1997, in the Southern District of New York and elsewhere, GHISLAINE MAXWELL, the defendant, Jeffrey Epstein, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, enticement, in violation of Title 18, United States Code, Section 2422.

10.   It was a part and object of the conspiracy that GHISLAINE MAXWELL, the defendant, Jeffrey Epstein, and others known and unknown, would and did knowingly persuade, induce, entice, and coerce one and more individuals to travel in interstate and foreign commerce, to engage in sexual activity for which a person can be charged with a criminal offense, in violation of Title 18, United States Code, Section 2422.

### Overt Acts

11.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    Between in or about 1994 and in or about 1997, when Minor Victim-1 was under the age of 18, MAXWELL participated in multiple group sexual encounters with Epstein and Minor Victim-1 in New York and Florida.

b.    In or about 1996, when Minor Victim-1 was under the age of 18, Minor Victim-1 was enticed to travel from Florida to New York for purposes of sexually abusing her at the New York Residence, in violation of New York Penal Law, Section 130.55.

c.    In or about 1996, when Minor Victim-2 was under the age of 18, MAXWELL provided Minor Victim-2 with an unsolicited massage in New Mexico, during which Minor Victim-2 was topless.

d.    Between in or about 1994 and in or about 1995, when Minor Victim-3 was under the age of 18, MAXWELL encouraged Minor Victim-3 to provide massages to Epstein in London, England, knowing that Epstein intended to sexually abuse Minor Victim-3 during those massages.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Enticement of a Minor to Travel to Engage in Illegal Sex Acts)

The Grand Jury further charges:

12.   The allegations contained in paragraphs 1 through 8 of this Indictment are repeated and realleged as if fully set forth within.

13.   From at least in or about 1994, up to and
including in or about 1997, in the Southern District of New York
and elsewhere, GHISLAINE MAXWELL, the defendant, knowingly did
persuade, induce, entice, and coerce an individual to travel in
interstate and foreign commerce to engage in sexual activity for
which a person can be charged with a criminal offense, and
attempted to do the same, and aided and abetted the same, to
wit, MAXWELL persuaded, induced, enticed, and coerced Minor
Victim-1 to travel from Florida to New York, New York on
multiple occasions with the intention that Minor Victim-1 would
engage in one or more sex acts with Jeffrey Epstein, in
violation of New York Penal Law, Section 130.55.

(Title 18, United States Code, Sections 2422 and 2.)

## COUNT THREE
### (Conspiracy to Transport Minors with Intent to Engage in Criminal Sexual Activity)

The Grand Jury further charges:

14.   The allegations contained in paragraphs 1
through 8 of this Indictment are repeated and realleged as if
fully set forth within.

15.   From at least in or about 1994, up to and
including in or about 1997, in the Southern District of New York
and elsewhere, GHISLAINE MAXWELL, the defendant, Jeffrey
Epstein, and others known and unknown, willfully and knowingly
did combine, conspire, confederate, and agree together and with
each other to commit an offense against the United States, to

wit, transportation of minors, in violation of Title 18, United States Code, Section 2423(a).

16.   It was a part and object of the conspiracy that GHISLAINE MAXWELL, the defendant, Jeffrey Epstein, and others known and unknown, would and did, knowingly transport an individual who had not attained the age of 18 in interstate and foreign commerce, with intent that the individual engage in sexual activity for which a person can be charged with a criminal offense, in violation of Title 18, United States Code, Section 2423(a).

<u>Overt Acts</u>

17.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   Between in or about 1994 and in or about 1997, when Minor Victim-1 was under the age of 18, MAXWELL participated in multiple group sexual encounters with EPSTEIN and Minor Victim-1 in New York and Florida.

b.   In or about 1996, when Minor Victim-1 was under the age of 18, Minor Victim-1 was enticed to travel from Florida to New York for purposes of sexually abusing her at the

New York Residence, in violation of New York Penal Law, Section 130.55.

   c. In or about 1996, when Minor Victim-2 was under the age of 18, MAXWELL provided Minor Victim-2 with an unsolicited massage in New Mexico, during which Minor Victim-2 was topless.

   d. Between in or about 1994 and in or about 1995, when Minor Victim-3 was under the age of 18, MAXWELL encouraged Minor Victim-3 to provide massages to Epstein in London, England, knowing that Epstein intended to sexually abuse Minor Victim-3 during those massages.

   (Title 18, United States Code, Section 371.)

### COUNT FOUR
**(Transportation of a Minor with Intent to
Engage in Criminal Sexual Activity)**

The Grand Jury further charges:

  18. The allegations contained in paragraphs 1 through 8 of this Indictment are repeated and realleged as if fully set forth within.

  19. From at least in or about 1994, up to and including in or about 1997, in the Southern District of New York and elsewhere, GHISLAINE MAXWELL, the defendant, knowingly did transport an individual who had not attained the age of 18 in interstate and foreign commerce, with the intent that the individual engage in sexual activity for which a person can be charged with a criminal offense, and attempted to do so, and

aided and abetted the same, to wit, MAXWELL arranged for Minor

Victim-1 to be transported from Florida to New York, New York on

multiple occasions with the intention that Minor Victim-1 would

engage in one or more sex acts with Jeffrey Epstein, in

violation of New York Penal Law, Section 130.55.

(Title 18, United States Code, Sections 2423(a) and 2.)

## COUNT FIVE
### (Perjury)

The Grand Jury further charges:

20.  The allegations contained in paragraphs 1

through 8 of this Indictment are repeated and realleged as if

fully set forth within.

21.  On or about April 22, 2016, in the Southern

District of New York, GHISLAINE MAXWELL, the defendant, having

taken an oath to testify truthfully in a deposition in

connection with a case then pending before the United States

District Court for the Southern District of New York under

docket number 15 Civ. 7344, knowingly made false material

declarations, to wit, MAXWELL gave the following underlined

false testimony:

Q.   Did Jeffrey Epstein have a scheme to recruit
     underage girls for sexual massages?  If you know.

A.   I don't know what you're talking about.

. . .

> Q.   List all the people under the age of 18 that you
>      interacted with at any of Jeffrey's properties?
>
> A.   <u>I'm not aware of anybody that I interacted with,</u>
>      <u>other than obviously [the plaintiff] who was 17</u>
>      <u>at this point.</u>

(Title 18, United States Code, Section 1623.)

## COUNT SIX
### (Perjury)

The Grand Jury further charges:

22.   The allegations contained in paragraphs 1 through 8 of this Indictment are repeated and realleged as if fully set forth within.

23.   On or about July 22, 2016, in the Southern District of New York, GHISLAINE MAXWELL, the defendant, having taken an oath to testify truthfully in a deposition in connection with a case then pending before the United States District Court for the Southern District of New York under docket number 15 Civ. 7344, knowingly made false material declarations, to wit, MAXWELL gave the following underlined false testimony:

> Q:   Were you aware of the presence of sex toys or
>      devices used in sexual activities in Mr.
>      Epstein's Palm Beach house?
>
> A:   <u>No, not that I recall.</u> . . .
>
>
> Q.   Do you know whether Mr. Epstein possessed sex
>      toys or devices used in sexual activities?
>
> A.   <u>No.</u>

. . .

Q.   Other than yourself and the blond and brunette
     that you have identified as having been involved
     in three-way sexual activities, with whom did Mr.
     Epstein have sexual activities?

A.   I wasn't aware that he was having sexual
     activities with anyone when I was with him other
     than myself.

Q.   I want to be sure that I'm clear.  Is it your
     testimony that in the 1990s and 2000s, you were
     not aware that Mr. Epstein was having sexual
     activities with anyone other than yourself and
     the blond and brunette on those few occasions
     when they were involved with you?

A.   That is my testimony, that is correct.


. . .


Q.   Is it your testimony that you've never given
     anybody a massage?

A.   I have not given anyone a massage.

Q.   You never gave Mr. Epstein a massage, is that
     your testimony?

A.   That is my testimony.

Q.   You never gave [Minor Victim-2] a massage is your
     testimony?

A.   I never gave [Minor Victim-2] a massage.

(Title 18, United States Code, Section 1623.)


_____
FOREPERSON

_____
AUDREY STRAUSS
Acting United States Attorney

17

Form No. USA-33s-274 (Ed. 9-25-58)

---

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

---

**UNITED STATES OF AMERICA**

v.

**GHISLAINE MAXWELL,**

Defendant.

---

### INDICTMENT

(18 U.S.C. §§ 371, 1623, 2422, 2423(a),
and 2)

---

AUDREY STRAUSS
Acting United States Attorney

_____
Foreperson

---

Mod AO 442 (09/13) Arrest Warrant    AUSA Name & Telno:  Alison Moe, 212-637-2225

# UNITED STATES DISTRICT COURT

for the

## Southern District of New York

United States of America
v.

Ghislaine Maxwell

*Defendant*

)
)
)
)
)
)

# 20 CR 330

Case No.

## ARREST WARRANT

To:    Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*    Ghislaine Maxwell                                                                    ,
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment      ❏ Superseding Indictment     ❏ Information     ❏ Superseding Information     ❏ Complaint
❏ Probation Violation Petition     ❏ Supervised Release Violation Petition     ❏ Violation Notice     ❏ Order of the Court

This offense is briefly described as follows:

Title 18, United States Code, Section 371 (conspiracy to entice minors)
Title 18, United States Code, Sections 2422 and 2 (enticement of a minor)
Title 18, United States Code, Section 371 (conspiracy to transport minors)
Title 18, United States Code, Sections 2423(a) and 2 (transportation of a minor)
Title 18, United States Code, Section 1623 (perjury)

Date:    06/29/2020

City and state:    White Plains, NY

_____
*Issuing officer's signature*

Hon. Lisa Margaret Smith, U.S. Magistrate Judge
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |

Date: _____

_____
*Arresting officer's signature*

_____
*Printed name and title*